# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAYR KIRAKOSYAN,<br><br>                Petitioner,<br><br>    v.<br><br>FERETI SEMAIA, ET AL.,<br><br>           Respondents. | Case No. 5:26-cv-01198-MBK<br><br>ORDER GRANTING PETITION FOR WRIT FOR HABEAS CORPUS |

Petitioner Grayr Kirakosyan, a native and citizen of Iran, is currently in the custody of the Department of Homeland Security at the Adelanto Detention Facility. Mr. Kirakosyan fled to the United States as a refugee in 1988 with his wife and children. In 1997, he was ordered removed due to a criminal conviction. Immigration authorities apprehended Petitioner in 2000, but released him on an Order of Supervision ("OSUP") in 2002 after they were unable to effectuate his removal. For the past two decades, Petitioner has

resided in the United States with his family, complied with all his conditions of supervision, and has not sustained any criminal convictions.

On November 21, 2025, Mr. Kirakosyan reported for a scheduled check-in appointment with Immigration and Customs Enforcement ("ICE"). At the appointment, ICE officers arrested Mr. Kirakosyan without notice or an opportunity to explain why he should not be detained. During his subsequent confinement, the Government has not identified any third country to which Mr. Kirakosyan can be removed or taken any concrete steps to facilitate his removal to a third country.

In this habeas action, Petitioner claims that the revocation of his release without notice or an opportunity to be heard violates procedural due process, 8 C.F.R. § 241.13(i)(3), and 8 C.F.R. § 241.4(*l*)(2)(iii). He also argues his ongoing confinement violates due process and 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. In their Response to the Petition and Application for Temporary Restraining Order, Respondents state that they "are not presenting an opposition argument." Dkt. 12 at 2.

Because it is undisputed that the Government has taken no steps to facilitate his removal, the Court finds that Mr. Kirakosyan's removal is not reasonably foreseeable and his detention is not authorized by Section 1231. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Mr. Kirakosyan's immediate release subject to the terms of his prior OSUP and preventing his re-detention unless Respondents comply with the

regulations governing the revocation of an OSUP and present sufficient evidence that his removal is likely in the reasonably foreseeable future.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner Grayr Kirakosyan is a 72-year-old native and citizen of Iran. Dkt. 1 at 2. Mr. Kirakosyan moved to what is now Armenia in the former Soviet Union when he was 17-years-old and became a citizen of the former Soviet Union. *Id.* at 2; Dkt. 1-1 at 2. In 1988, Mr. Kirakosyan entered the United States with his wife and two children as refugees. Dkt. 1 at 15; Dkt. 1-1 at 2. Petitioner became a lawful permanent resident in 1989. Dkt. 1-1 at 2. However, after he was convicted of attempted importation of opium, Petitioner was ordered removed. Although government records are contradictory as to the date and underlying charge for his removal, it appears that Petitioner was ordered removed on January 28, 1997. Dkt. 1 at 15, fn. 2.

After a subsequent conviction and sentence for assault in Arizona, immigration authorities took Mr. Kirakosyan into custody at a detention center in San Pedro, California, where he remained detained for approximately one year. Dkt. 1 at 15. During his time in detention, Petitioner's wife contacted the Armenian Consulate to inquire about obtaining travel documents for him, in an effort to expedite his release from detention and removal. *Id.* The Armenian Consulate Officer provided Petitioner's wife with a business card advising immigration authorities that the Armenian government would not accept Petitioner. *Id.* After filing and subsequently voluntarily dismissing a petition for writ of habeas corpus in 2001, Petitioner was released on OSUP on January 22, 2002. *Id.*; Dkt. 1-4 (Order of Supervision). Since his release, Mr. Kirakosyan has complied with all conditions of release, including appearing in person as requested for check-in

appointments, not committing any crimes, and assisting in obtaining travel documents. Dkt. 1 at 16. Mr. Kirakosyan has not had any encounters with law enforcement since his release in 2002. *Id.*

In September 2025, Mr. Kirakosyan reported for a supervision appointment. Dkt. 1-1 at 4. Immigration authorities instructed him to return in October of 2025. *Id.* When he reported for his October 2025 appointment, he was instructed to return again in November 2025. *Id.* Mr. Kirakosyan reported as instructed for his supervision appointment at the ICE Los Angeles Office on November 21, 2025. Dkt. 1-1 at 4. His son-in-law, Andrey, accompanied him to assist with translation. Dkt. 1 at 16. When Petitioner's name was called, he and Andrey went together to a small office, where an ICE Officer asked Petitioner whether he had obtained a doctor's note. *Id.* Petitioner did not know what the officer was talking about. *Id.* The ICE Officer asked Andrey to return to the waiting area, instructed Petitioner to empty his pockets, and detained Petitioner without providing a reason for the detention. *Id.* at 16-17. The officer did not provide Petitioner with notice of his detention or any opportunity to be heard regarding the revocation of his release. *Id.* at 17.

After detaining Mr. Kirakosyan, Respondents transported Mr. Kirakosyan to the Adelanto Detention Facility, where he remained until January 12, 2026. *Id.* at 17. On that date, Mr. Kirakosyan was transported to a detention facility in El Paso, Texas, where he remained until February 12, 2026, when he was transferred back to Adelanto. *Id.*

During his confinement, Respondents have not provided Petitioner with a written decision justifying his re-detention. *Id.* Respondents have asked Petitioner where he wants to be deported, but have not informed him of any country that will accept him. *Id.* ICE has reviewed his ongoing custody once

4

and determined to continue his custody. *Id.* at 17; Dkt. 1-6 (Decision to Continue Detention).

While detained at Adelanto, Mr. Kirakosyan has experienced difficulties due to his medical conditions. Dkt. 1 at 18. He is elderly, "has heart problems, high blood pressure, and joint and knee pain." *Id.* He requires several medications and uses a hearing aid. *Id.*

Petitioner filed the instant habeas petition, along with an application for a temporary restraining order, on March 14, 2026. Dkt. 1, 4. He asserts five causes of action: (1) his re-detention without notice or an opportunity to be heard violates procedural due process; (2) ICE violated its regulatory procedures under 8 C.F.R. § 241.13(i) for revocation of release; (3) his ongoing detention violates 8 U.S.C. § 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable; (4) the revocation of his release by an unauthorized official violates 8 C.F.R. § 241.4l(2)(iii); and (5) his prolonged detention violates due process. *Id.* at 18-23. Petitioner requests that the Court issue an order requiring his immediate release subject to the same terms and conditions of his prior OSUP; enjoining Respondents from re-detaining Petitioner unless Respondents comply with regulations governing the revocation of an OSUP and present sufficient evidence of changed circumstances to the Court that Petitioner's removal from the United States is reasonably foreseeable; and enjoin Respondents from re-detaining Petitioner absent sufficient evidence to the Court that Petitioner's removal from United States is reasonably foreseeable. Dkt. 1 at 26-27.

The District Court issued an Order requiring a response to Petitioner's *ex parte* application for a Temporary Restraining Order and the underlying Petition on or before March 24, 2026. Dkt. 7. The Order further required the Parties to file a joint status report on or before March 23, 2026 advising the

Court whether they consent to Magistrate Judge jurisdiction. *Id*. The Parties filed the status report and consented to this Court's jurisdiction for all purposes. Dkts. 9, 10.

On March 24, 2026, Respondents filed their Response to Petitioner's *ex parte* application for a Temporary Restraining Order and Petition. Dkt. 12. The Response consists of a single paragraph, in which Respondents submit "Respondents are not presenting an opposition argument." *Id*. at 2.

## II.   DISCUSSION

In light of Respondents' statement that they "are not presenting an opposition argument," the Court finds that Petitioner's ongoing detention is unlawful. Petitioner has shown that his continued detention violates Section 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Petitioner has also shown that his re-detention without any notice or an opportunity to be heard violates procedural due process.

**A. Petitioner's Detention Violates 8 U.S.C. § 1231.**

Petitioner argues that he is entitled to release because no statute authorizes his ongoing confinement.

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id*. at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id*. at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id*.

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id*. at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The Court finds that Petitioner's detention is not authorized by Section 1231(a)(6) because his removal is not "reasonably foreseeable." Mr. Kirakosyan has been detained since November 21, 2025. Petitioner's current detention has therefore lasted less than six months. However, Petitioner was previously detained for approximately a year by immigration authorities, until his release on an OSUP in 2002. The Government has therefore confined him, in total, for more than 180 days after he had an executable removal order, but has failed to remove him during that time. His ongoing detention is therefore

"presumptively unreasonable." *See Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again" and collecting cases). *See also Bailey v. Lynch*, No. 16-cv-2600-JLL, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("[T]he removal period does not restart simply because an alien who has previously been released is taken back into custody.").

Even if Petitioner's periods of detention cannot be cumulated, he may still challenge his detention as not authorized by Section 1231. *Zadvydas* establishes a "presumption" of unreasonableness after six months; it does not preclude a noncitizen from challenging their detention earlier where removal is demonstrably not foreseeable. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-96 (D.N.J. 2025) ("Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time" and collecting cases).

Since Petitioner's re-detention, the Government has not taken any concrete steps to secure travel documents to effectuate Mr. Kirakosyan's removal to a third country, much less identify a country to which he can be lawfully removed or that would accept him. It appears that the Government detained Petitioner under the guise of removing him to a third country without having investigated whether such removal was possible. The statute does not permit such needless detention.

To the contrary, the Supreme Court has made clear that the Section 1231(a)(6) only permits detention where removal is "reasonably foreseeable":

> "In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to

8

secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699-700.

In sum, Petitioner's ongoing detention does not advance Section 1231's basic purpose because there is no reason to think that the Government can, or will, remove him to a third country. Furthermore, Respondents do not present any argument in opposition to Petitioner's factual or legal contentions. Dkt. 12. Accordingly, the Court concludes that Petitioner's continued detention is unlawful.

### B. Petitioner is Entitled to Notice and an Opportunity to be Heard Prior to Re-detention.

Petitioner also claims that his re-detention violates procedural due process. Petitioner argues that his re-detention after his release under OSUP absent notice and opportunity to be heard violates the Fifth Amendment's Procedural Due Process Clause. Dkt. 1 at 18-19. Petitioner seeks the procedural protections afforded to released noncitizens with final orders of removal—like Petitioner—under Section 1231.

Governing regulations establish the process by which ICE may revoke a noncitizen's release on an order of supervision ("OSUP") under Section 1231. *See* 8 C.F.R. §§ 241.4(*l*), 241.13(i). ICE may revoke release when a noncitizen violates a condition of their OSUP, "on account of changed circumstances, [if ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," or certain officials may exercise their discretion to revoke release. *Id*. §§ 241.4(*l*)(1), § 241.4(*l*)(2), 241.13(i)(1), 241.13(i)(2). Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id*. § 241.4(d). Additionally, the noncitizen must be "notified of the

9

reasons for revocation," *id.* § 241.4(*l*)(1), and afforded "an initial informal interview promptly ... to respond to the reasons for revocation stated in the notification," *id.* § 241.13(i)(3).

Here, the Petitioner alleges—and the Respondents do not contest—that he was re-detained without any notice or an opportunity to be heard, in violation of the governing regulations. The Court therefore concludes that Petitioner is entitled to protection from any future re-detention by immigration authorities without adequate notice and an opportunity to be heard.

### III.    CONCLUSION

For the foregoing reasons, it is ORDERED that: (1) judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to his prior OSUP terms and conditions; (3) Respondents are enjoined from re-detaining Petitioner unless Respondents comply with regulations governing the revocation of an OSUP and present sufficient evidence that Petitioner's removal from the United States is reasonably foreseeable; and (4) Respondents shall file a status report within seven days to confirm that Petitioner has been released from custody.

Dated: March 25, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE